# Hill v. The State.

*Indictment for Unlawfully Throwing down a Fence.*

1. *Unlawfully throwing down a fence; section 1364 of the Code has no application.*—In order to justify a conviction under section 3888 of the Criminal Code for unlawfully, maliciously or negligently throwing down another's fence, it is not necessary to show that the fence alleged to have been thrown down was a lawful fence, five feet high, as defined in section 1364 of the Civil Code; the latter section of the

Code having no application when a person is prosecuted under section 3888.

2. *Same; when ownership properly laid in tenant.*—In a prosecution under section 3888 of the Criminal Code, for unlawfully throwing down a fence, the ownership of the fence is properly laid in the tenant, who was, at the time of the commission of the offense complained of, in the legal possession and control, and entitled to the use, of the fence.

3. *Same; when case not made out.*—Where, on a trial under an indictment charging the defendant with unlawfully, maliciously or negligently throwing down another's fence, (Code, § 3888), it is shown that the defendant threw down the fence in question to obtain his cattle, which were unlawfully detained until defendant paid for a trespass by them upon prosecutor's crops, the evidence is not sufficient to justify a conviction; since a claim for damages to prosecutor's crop did not authorize him to seize and detain the cattle of the defendant until compensation had been made, and the defendant had the right, under the circumstances, to turn his cattle out.

APPEAL from the County Court of Hale.

Tried before the Hon. W. C. CHRISTIAN.

The indictment under which the appellant in this case was tried and convicted charged that "Wiley Hill did unlawfully, maliciously, or negligently throw down a fence, the property of Lige Monroe *alias* Elijah Monroe, and did fail to immediately rebuild or replace the same."

The testimony on the part of the State tended to show that the prosecutor, Lige Monroe, had leased the premises from one Mrs. Poelnitz, and that, during said leasehold, he built the said fence or cowpen, which is alleged to have been broken or destroyed, that the defendant's cows were found in prosecutor's cotton field and that prosecutor had said cows put in his cow-pen; that the defendant went to the house of prosecutor and demanded possession of said cows; that prosecutor's wife (the prosecutor being absent) refused to surrender said cows to defendant unless defendant would pay prosecutor all damages done to his cotton by defendant's cows; that defendant refused to pay any damages, and thereupon went to the gap in said cow pen, (there was no gate or bars), and pulled the fence down at said gap and drove his cows out; and that defendant did not repair or rebuild said fence or gap.

The testimony for the defendant was in conflict with that of the State, and tended to show that the prosecutor's wife gave him permission to take the cows, and

[Hill v. The State.]

that the gap in the cow pen was down when he went to drive the cows out; and that the said fence or inclosure was not more than four feet high.

Among the other charges requested by the defendant, and to the refusal to give each of which he separately excepted, were the following: (2.) "Unless the jury believe that the fence was at least five feet high, they must acquit the defendant." (A.) "If the jury believe the evidence, they must find the defendant not guilty."

A. M. TUNSTALL, for appellant, cited Code of 1886, § 3888; *Brazleton v. State*, 66 Ala. 69.

WM. L. MARTIN, Attorney-General, for the State.

COLEMAN, J.—The defendant was indicted and convicted for a violation of section 3888 of the Criminal Code. Ownership of the fence was laid in Elijah Monroe. The evidence shows that the interest of Elijah Monroe, was that of a tenant, in possession, and holding by virtue of an unexpired lease. The evidence shows also that the fence was constructed of rails and was about four feet high; and it was not controverted that the defendant threw the fence down, and that he failed "immediately to rebuild or repair the same." Section 1364 of the Civil Code, which defines a lawful fence to be five feet high, has no application when a person is indicted under section 3888 of the Criminal Code. The law imposes no duty upon any person to construct his fences five feet high. If the owner is satisfied to build his fences or make his enclosures less than five feet high, that fact does not license persons to enter upon his premises and unlawfully throw them down, and leave them down. Fences or enclosures less than five feet high are within the meaning of section 3888 of the Criminal Code. When one person sues another under the statute to recover damages resulting from a trespass, by the cattle of another breaking into his enclosure, he must show that he had a lawful fence as prescribed by the Civil Code. The ownership was properly laid in the tenant, who at the time was in legal possession and control, and entitled to the use of the fence. Whatever may have been the motive of the prosecutor, in prosecuting the defendant, whether actuated by malice or not, could not affect the

[Hill v. The State.]

question of the guilt or innocence of the defendant. The feelings or motive of the prosecutor might and should be considered by the jury, in weighing his evidence; in determining whether or not the defendant was guilty as charged.

The facts of the case require a construction of the statute, under which the indictment was preferred. It reads as follows:

"3888 (4413, 4420). *Maliciously or negligently breaking or destroying fences.*—Any person, who unlawfully, maliciously, or negligently destroys, throws down, or breaks any fence or inclosure of another, and fails immediately to rebuild or repair the same, must, on conviction, be fined not less than twenty, nor more than five hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months; and the fine goes to the injured party."

Being a penal statute it must be strictly construed. Unless the fence or enclosure of another is unlawfully destroyed, thrown down or broken, the statute is not violated although the person may fail immediately to rebuild or repair the same. So, if one person unlawfully throws down the fence of another, if he immediately repair or rebuild the same, he can not be convicted under this statute. The facts in this case show that the prosecutor had confined the cattle of the defendant in a pen, where they were found by him. There is nothing in the record to show that the prosecutor had any authority to pen or detain the defendant's cattle. If the cattle of the defendant had unlawfully damaged the crops of the prosecutor, he had his legal remedy, but such a claim did not authorize the party damaged, to seize upon and detain the cattle of the defendant until compensation had been made. The defendant had the right under the circumstances to turn his cattle out of the pen. The prosecutor set up no legal claim or right to hold them. His only claim was for compensation for damages done to his crop. No threats nor intimidation were used, and nothing said or done which tended to a breach of the peace. *Street v. Sinclair*, 71 Ala. 110.

It may be that there are local statutes applying to some parts of Hale county, which authorize the impounding or detention of another's cattle, under the circumstances under which the cattle were seized and detained by the

[Bradford v. The State.]

prosecutor, but none has been cited. There is nothing, however, in the record to show in what part of Hale county the prosecutor lived, or the fence was located. We are compelled to consider the case under the general law of the State. When thus considered the defendant was entitled to the affirmative charge, and should have been acquitted.

Reversed and remanded.